UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE LIFE IS GOOD COMPANY, <br> Plaintiff <br><br> v. <br><br> SUNFROG, LLC, <br> Defendant | C.A. No. |

## VERIFIED COMPLAINT AND JURY DEMAND

### PARTIES

1. Plaintiff The Life is Good Company ("Life is Good") is a Massachusetts corporation with a principal place of business in Boston, Massachusetts.

2. Upon information and belief defendant SunFrog, LLC ("SunFrog") is a limited liability company organized under the laws of the State of Michigan, with a principal place of business in Gaylord, Michigan. SunFrog operates an interactive website at www.sunfrog.com through which designers of t-shirts advertise and sell those shirts. Consumers throughout the world, including in Massachusetts, can purchase the t-shirts directly through the Defendant's website.

### JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Plaintiff is a citizen of a different state than the Defendant, and the property right at issue has a value in excess of $75,000.00. In addition, this Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b) because this matter involves violations of the Lanham Act, 15 U.S.C. § 1051, et seq., as well as substantial and related state law claims.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Life is

1

Good's cause of action arose and Life is Good is being injured in this judicial district, and because Defendant is doing business in this judicial district and targeting Massachusetts customers to purchase its infringing and counterfeit products.

## FACTS

A. <u>The Plaintiff and its "LIFE IS GOOD" and "Jake" Trademarks.</u>

5. Since at least as early as 1994, and continuously therefrom, the Plaintiff and its predecessors (Albert Jacobs and John Jacobs, doing business as Jacobs Gallery) have sold various products such as t-shirts, hats, pants, other clothing, stickers, flying discs, coffee mugs, *inter alia*, under the trademark "LIFE IS GOOD." The goods have been sold to retail stores and consumers directly by Life is Good, through its licensees, or through its web site.

6. Since 1994, the Plaintiff has continuously and pervasively utilized its "LIFE IS GOOD" trademark within this district and throughout the United States on its products, on hang tags, displays, boxes, packaging and labels, at its website (www.lifeisgood.com), and in catalogs and other places.

7. In short, the Plaintiff has invested substantial resources in promoting its products under the "LIFE IS GOOD" mark, and in developing national recognition of its "LIFE IS GOOD" mark and brand. As a result, the "LIFE IS GOOD" mark is perceived as a distinctive indicator of Plaintiff as the source of the goods.

8. On December 24, 1996, the United States Patent and Trademark Office (the "U.S.P.T.O.") issued a registration for Plaintiff's trademark "LIFE IS GOOD," registration number 2,025,737 (the "'737 Registration" ). The registration was issued to Jacobs Gallery. The goods under this registration are "Sportswear, namely T-shirts, sweatshirts, shirts, hats, pants, and shorts." The trademark was assigned by Jacobs Gallery to Life is good, Inc. on April 16,

2

1998. On April 6, 2002, the U.S.P.T.O. accepted Life is Good's section 8 and 15 affidavit for the '737 registration, and thus, it has become incontestable pursuant to 15 U.S.C. § 1065. The trademark was renewed on January 11, 2017, and is currently in full force and effect. On October 15, 2008, the change of the name of the registrant to The Life is Good Company was recorded with the U.S.P.T.O.

9. In addition, Life is Good has eleven (11) other U.S. trademark registrations for the "LIFE IS GOOD" trademark for a variety of goods and services, and has registered the "LIFE IS GOOD" trademark in Canada, Europe and numerous other countries.

10. Further, the Plaintiff, through assignment from Jacobs Gallery, is the owner of the "Jake Symbol," which Life is Good utilizes as a trademark on or in connection with many of the products it sells. An example of the "Jake Symbol" is attached hereto as Exhibit A.

11. The "Jake Symbol" was registered on April 22, 1997, U.S. Reg. Number 2,055,452, and was assigned to Plaintiff on April 16, 1998. The U.S.P.T.O. accepted Life is Good's section 8 and 15 affidavit for the "Jake Symbol" registration, and thus, it has become incontestable pursuant to 15 U.S.C. § 1065. The "Jake Symbol" trademark registration was renewed on May 11, 2007, and is currently in full force and effect.

12. Life is Good also owns the trademark rights in the female version of the "Jake Symbol" – known as "Jackie" – which Life is Good has used in connection with the sale of clothing since at least 2002.

13. The trademark "LIFE IS GOOD" appears on or in connection with every product sold by Life is Good, and the "Jake Symbol" and "Jackie" appear on many of Life is Good's products.

14. For many years Life is Good has marketed its products and offered its products for

3

sale at its internet web site located at www.lifeisgood.com. Representative pages from Life is Good's web site are attached hereto as Exhibit B.

B. <u>The Defendant and Its Infringing Activities</u>.

15. SunFrog is in the business of printing and selling t-shirts with a wide variety of designs. Upon information and belief, Defendant has online tools that permit its customers to create and upload infringing and counterfeiting designs, and start a "campaign" on Defendant's website. The designs printed by Defendant are submitted to Defendant or created online using Defendant's design tools at Defendant's website. According to SunFrog's website, SunFrog pays its customers for every shirt sold, and the submitted designs remain available online as long as people are interested in purchasing them.

16. On information and belief, upon each sale Defendant reimburses itself for "production costs" and pays itself a processing fee, and then pays out the remaining revenue to the t-shirt designer.

17. On information and belief, Defendant has no method or process for screening a design to ensure that it does not infringe the intellectual property rights of third-parties before the design is launched and sales commence on Defendant's site.

18. Rather, the only "protection" that Defendant provides to third-party intellectual property owners is its "Report an Infringement" on-line portal. However, that portal requires intellectual property owners to inform Defendant of infringement *after* the site has begun hosting the infringing design and fulfilling sales orders.

19. Although Defendant states on its website that it will act quickly to take appropriate action against the offending user, in fact Defendant has refused to deny serial infringers access to its website despite Defendant receiving numerous reports and complaints about these serial

4

infringers.

20. Although Defendant asserts that its "Report an Infringement" on-line portal meets the requirements of the Digital Millennium Copyright Act ("DMCA"), it does not. Defendant's on-line portal fails to effectively prevent repeat infringers from continuing to access Defendant's site to sell infringing products. Further, the DMCA "safe harbor" provisions only apply to copyright infringement claims; thus Defendant's on-line portal affords it no "safe harbor" from Life is Good's claims of trademark infringement.

21. In January of 2017, Life is Good first learned that Defendant was offering for sale on its website t-shirts that infringe Life is Good's LIFE IS GOOD, "Jake Symbol" and "Jackie" trademarks. As a result, on January 19, 2017, counsel for Life Is Good reported the infringement through SunFrog's portal.

22. Although Defendant did remove the initial infringing t-shirts from its website, numerous additional campaigns have offered infringing products on SunFrog's website over the past several weeks. As a result, Life is Good's counsel was forced to submit additional infringement reports through SunFrog's portal on the following dates:

> February 1, 2017
> March 6, 2017
> March 9, 2017
> March 13, 2017
> March 16, 2017
> March 27, 2017
> March 28, 2017
> March 30, 2017.

23. Nearly all of the infringing campaigns emanated from the same source: a campaigner that calls itself HTGteam.

24. Although Defendant eventually removed the above-identified infringing campaigns,

SunFrog has not taken steps to deny HTGteam access to its site. This is proven by the fact that Life is Good's counsel discovered additional HTGteam infringing campaigns on SunFrog's site on April 5 and 6, 2017. Attached hereto as Exhibit C are printouts from SunFrog's website showing the latest infringing campaigns.

25. Because of the rampant infringement promoted on Defendant's site, Life is Good has repeatedly requested that Defendant take affirmative steps to ensure that campaigns that infringe Life is Good's trademark rights are denied access to Defendant's website. First, Life is Good's counsel sent a letter to SunFrog's General Counsel on March 20, 2017 demanding that SunFrog take such steps immediately. Attached hereto as Exhibit D is a copy of that letter. SunFrog responded to Exhibit D with a letter instructing Life is Good to submit infringement reports to SunFrog, but ignoring Life is Good's demand that SunFrog deny serial infringers access to its website. Attached hereto as Exhibit E. is a copy of SunFrog's response letter.

26. In addition, in early March of 2017 Life is Good's General Counsel placed two calls to SunFrog and left messages for SunFrog's General Counsel concerning the infringement issue. SunFrog's General Counsel never returned those messages. Further, on March 29, 2016 and again on March 31, 2016, Life is Good's counsel spoke by telephone with Jessica from SunFrog's customer service department. During those telephone calls Life is Good's counsel repeated its demand that SunFrog deny access to its website to the serial infringers. In response, Jessica advised Life is Good's counsel that SunFrog's General Counsel had recently left the company, and that the new General Counsel would contact Life is Good's counsel within 24 hours. In fact, Life is Good's counsel has never received a return call from anyone at SunFrog.

27. Defendant's actions have caused and/or are likely to cause confusion, mistake, or deception among the consuming public as to the source or origin of the products sold on

6

Defendant's website, and are likely to create a false belief that sales on Defendant's website are authorized by or sponsored by Life is Good. As a result, the Defendant's actions are causing, and unless enjoined will continue to cause, damage to the substantial goodwill that Life is Good has developed in its marks and brand.

28. If the Defendant is not enjoined from misappropriating Life is Good's marks, the Plaintiff will suffer immediate and irreparable harm.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
## 15 U.S.C. § 1114

29. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 of the verified complaint.

30. Plaintiff's marks "LIFE IS GOOD" and the "Jake Symbol" are protected by valid, subsisting, and incontestable United States Trademark Registrations. Additionally, Life is Good has developed common law rights in its "Jackie" trademark.

31. The commercial use of Life is Good's trademarks on t-shirts and other products by Defendant as described above is a willful infringement of Life is Good's registered trademarks, and such commercial use was with knowledge of and intended to trade off of Life is Good's prior rights to its registered trademarks.

32. Defendant's solicitation, manufacture, offering for sale, sale and shipment of infringing products creates a likelihood of confusion in the minds of consumers as to Life is Good's affiliation, connection or association with, or sponsorship or endorsement of the infringing products.

33. Plaintiff has not authorized the Defendant to make the above-described uses of Plaintiff's trademarks.

7

34. Upon information and belief, the Defendant acted knowingly and intentionally in misappropriating the Plaintiff's trademarks, and has continued to do so despite actual knowledge of Plaintiff's rights and Defendant's infringement.

35. The goodwill of Life is Good's trademarks is of enormous value, and Life is Good is suffering and will continue to suffer irreparable harm should Defendant's unauthorized manufacturing, selling and shipping of the infringing products continue.

36. Defendant's use of Life is Good's trademarks on the infringing products has continued and will continue unless enjoined by this Court.

37. Life is Good is entitled to preliminary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act, including, without limitation, compensatory damages, enhanced damages, disgorgement of profits and costs and attorney's fees.

## COUNT II
## UNFAIR COMPETITION AND PASSING OFF UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

38. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 37 of the verified complaint.

39. Defendant's manufacture, sale and shipment of products bearing the Life is Good trademarks that compete directly with authentic Life is Good products has caused and will likely cause confusion, mistake or deception on the part of persons interested in purchasing authentic Life is Good products as to the origin of Defendant's infringing products, and/or the sponsorship or approval by Life is Good of Defendant's infringing products.

40. Upon information and belief, Defendant's unfair competition and passing off has been willful and deliberate, and has continued despite actual knowledge of Plaintiff's rights and

Defendant's infringement.

41. The goodwill of Life is Good's trademarks is of enormous value, and Life is Good is suffering and will continue to suffer irreparable harm should Defendant's unfair competition and passing off of the infringing products continue.

42. Defendant's unfair competition and passing off has continued and will continue unless enjoined by this Court.

43. Life is Good is entitled to preliminary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act, including, without limitation, compensatory damages, enhanced damages, disgorgement of profits and costs and attorney's fees.

## COUNT III
## CONTRIBUTORY TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. §§ 1114 and 1125(a)

44. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 43 of the verified complaint.

45. Defendant manufactures, sells and ships infringing and counterfeit products created by unnamed third parties, including the person or entity identified on Defendant's website as "HTGteam."

46. In view of the numerous notices provided to it by Life is Good, as well as the letter and telephone calls placed by Life is Good's counsel, Defendant is aware that HTGteam and others are creating infringing and counterfeit designs which Defendant is manufacturing, selling and shipping.

47. Defendant is liable for contributory trademark infringement through its actions of manufacturing, selling, and shipping products that it knows bear infringing and counterfeit

9

designs, and through its refusal to deny access to its website to such serial infringers despite repeated notices.

## COUNT IV
## COUNTERFEITING UNDER THE LANHAM ACT, 15 U.S.C. § 1114

48. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 47 of the verified complaint.

49. Defendant, without authorization from Life is Good, has manufactured, sold and shipped products, as described above, that display counterfeits or colorable imitations of federally registered Life is Good trademarks.

50. Defendant's actions are intended to cause, have caused and are likely to continue to cause confusion, mistake and deception among consumers and potential consumers as to whether Defendant's counterfeit products originate from or are affiliated with, sponsored by, licensed by or endorsed by Life is Good.

51. Defendant has acted with knowledge of Life is Good's trademark rights and with a deliberate, willful intention to trade upon the consumer goodwill created and enjoyed by Life is Good.

52. Defendant's actions constitute trademark counterfeiting in violation of 15 U.S.C. § 1114.

53. The goodwill of Life is Good's trademarks is of enormous value, and Life is Good is suffering and will continue to suffer irreparable harm should Defendant's unauthorized manufacturing, selling and shipping of counterfeit products continue.

54. Defendant's use of Life is Good's trademarks on counterfeit products has continued and will continue unless enjoined by this Court.

55. Life is Good is entitled to preliminary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act, including, without limitation, compensatory damages, enhanced damages, disgorgement of profits and costs and attorney's fees.

## COUNT V
## UNFAIR COMPETITION UNDER THE COMMON LAW

56. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 55 of the verified complaint.

57. Plaintiff's trademarks are well-known throughout the United States.

58. Defendant's misappropriation of Life is Good's trademarks constitutes unfair competition in violation of the Lanham Act and the common law, as well as common law trademark infringement.

59. Unless enjoined, these acts will cause irreparable injury and damage to Plaintiff for which there exists no adequate remedy at law.

WHEREFORE, Plaintiff The Life is Good Company prays that this Court:

1. Enter judgment in favor of Plaintiff on all counts of the complaint;

2. Award Plaintiff monetary damages plus statutory interest;

3. Award Plaintiff enhanced damages, attorneys' fees and costs;

4. Order Defendant to disgorge all profits realized from the sale of infringing products;

5. Order Defendant to pay to Plaintiff statutory damages of $1,000,000 per counterfeit mark per type of product sold, offered for sale, or distributed in accordance with 15 U.S.C. § 1117;

6. Order Defendant to surrender all infringing products for destruction;

7. Enter a preliminary injunction enjoining and restraining the Defendant, its directors, officers, agents, servants, employees, attorneys, subsidiaries, parents, affiliated companies, successors, and assigns, and all persons in active concert or participation with said Defendant who receive actual notice of this Court's orders by personal service or otherwise, from (1) operating the www.sunfrog.com website, or any similar website, unless and until Defendant has provided evidence to this Court showing that it has established a policy that insures that every campaign seeking access to any of Defendant's websites is screened against Life is Good's Trademarks prior to gaining access to Defendant's websites; and/or (2) from using in commerce any counterfeit or colorable imitation of Plaintiff's "LIFE IS GOOD", "Jake Symbol" or "Jackie" trademarks, or any mark confusingly similar to those trademarks;

8. Enter a permanent injunction enjoining and restraining the Defendant, its directors, officers, agents, servants, employees, attorneys, subsidiaries, parents, affiliated companies, successors, and assigns, and all persons in active concert or participation with said Defendant who receive actual notice of this Court's orders by personal service or otherwise, from (1) operating the www.sunfrog.com website, or any similar website, unless and until Defendant has provided evidence to this Court showing that it has established a policy that insures that every campaign seeking access to any of Defendant's websites is screened against Life is Good's Trademarks prior to gaining access to Defendant's websites; and/or (2) from using in commerce any counterfeit or colorable imitation of Plaintiff's "LIFE IS GOOD", "Jake Symbol" or "Jackie" trademarks, or any mark confusingly similar to those trademarks; and

9. Award such further relief as the Court deems just and appropriate.

## Jury Demand

The Plaintiff demands a trial by jury on all issues so triable.

                                        THE LIFE IS GOOD COMPANY,
                                        By its attorneys,

                                        /s/ Thomas E. Kenney
                                        Thomas E. Kenney (#561590)
                                        Pierce & Mandell, P.C.
                                        11 Beacon Street, Suite 800
                                        Boston, MA 02108
                                        (617) 720-2444
                                        tom@piercemandell.com

## VERIFICATION

I, John W. Banse, do declare that I have read the foregoing complaint and that I know the contents thereof. The same is true to my knowledge except to those matters which are alleged on information and belief; as to those matters, I believe them to be true.

I declare under the penalties of perjury that the foregoing is true and correct and that this declaration was executed on April 7, 2017 in Boston, MA.

_____
John W. Banse
General Counsel
The Life is Good Company